IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GAEDEKE HOLDINGS VII, LTD., ) <br> ) <br>         Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> STAMPS BROTHERS OIL AND ) <br> GAS, LLC, et al., ) <br> ) <br>         Defendants. ) <br> ──────────────────────── ) <br> ) <br> GRANDE OIL & GAS, INC., ) <br> ) <br>         Plaintiff, ) <br> -vs- ) <br> ) <br> GAEDEKE OIL & GAS ) <br> OPERATING, LLC and GAEDEKE ) <br> HOLDINGS VII, LTD., ) <br> ) <br>         Defendants and ) <br>         Counterclaim Plaintiffs, ) <br> ) <br> -vs- ) <br> ) <br> CHARLES A. SWANSON, ) <br> ) <br>         Counterclaim Defendant. ) | Case No. CIV-19-344-F <br><br><br><br><br><br><br><br><br><br><br><br><br><br> Case No. CIV-20-170-F |

## **ORDER**

    Defendants and Counterclaim plaintiffs Gaedeke Oil & Gas Operating, LLC ("GOGO") and Gaedeke Holdings VII, Ltd. ("GHVII") (collectively, "Gaedeke Parties"), pursuant to Rule 56, Fed. R. Civ. P., have moved for summary judgment

with respect to the claims alleged by plaintiff Grande Oil & Gas, Inc. ("Grande") in the First Amended Complaint (doc. no. 82 in CIV-20-170-F), and have moved for partial summary judgment with respect to the counterclaims for breach of fiduciary obligations and the imposition of a constructive trust alleged against Grande and counterclaim defendant Charles A. Swanson (Swanson) (collectively, "Grande Parties"), in the Re-Stated Amended Counterclaims (doc. no. 83 in doc. no. CIV-20-170). *See*, doc. no. 125 in CIV-20-170-F. The Grande Parties have responded to the motion, and the Gaedeke Parties have replied. *See*, doc. nos. 127 and 129 in CIV-20-170-F. Upon due consideration of the parties' submissions, the court makes its determination.

I.

*Procedural History*

From 2013 until approximately September 2019, Swanson, a landman, through his entity Grande, provided certain services to the Gaedeke Parties to facilitate the acquisition of oil and gas leaseholds. Many of the leaseholds were in Grady County, Oklahoma.

In April of 2019, GHVII filed an action in this district against Stamp Brothers Oil and Gas, LLC (Stamp Brothers), arising out of the acquisition of certain leaseholds in Grady County. With leave of court, GHVII added the Grande Parties as defendants. As to the Grande Parties, GHVII asserts claims for negligence, breach of contract, fraud, conspiracy to commit fraud, and breach of fiduciary obligations. GHVII seeks compensatory and punitive damages. In addition, GHVII claims the Grande Parties were unjustly enriched to its detriment, and the company seeks relief in the form of a constructive trust.

At the end of December of 2019, Grande filed an action against the Gaedeke Parties in the District Court of Oklahoma County seeking to recover payment for services provided to the Gaedeke Parties and requesting declaratory relief with respect to ownership of certain claims, referred to as the Pickard and Melear Claims.

2

The action was removed by the Gaedeke Parties to this court. Upon motion by the Gaedeke Parties, the action was dismissed without prejudice on the ground that Grande lacked capacity to sue because its entity status was suspended by the Oklahoma Tax Commission ("OTC") on August 4, 2006. After reinstatment by the OTC, Grande refiled its action. The Gaedeke Parties filed counterclaims against the Grande Parties. These counterclaims include breach of contract, fraud, breach of fiduciary obligations, negligence, and professional malpractice/negligence. The Gaedeke Parties seek compensatory and punitive damages, as well as the constructive trust.

Upon agreement of the parties, GHVII's action and Grande's action were consolidated for discovery purposes only. Thereafter, the cases were reassigned to the undersigned. GHVII's action against Stamp Brothers has been stayed pending Chapter 7 bankruptcy proceedings. All claims and counterclaims other than those involving Stamp Brothers are currently set for trial on the court's September 2024 trial docket.

II.

*Standard of Review and Applicable Law*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. When applying this standard, the court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *See*, Teets v. Great-West Life & Annuity Insurance Company, 921 F.3d 1200, 1211 (10th Cir. 2019).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Teets, 921 F.3d at 1211 (quotation marks and citation omitted). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set

3

forth specific facts from which a rational trier of fact could find for the nonmovant." *Id*.

As the court is exercising diversity jurisdiction over the subject action between Grande and the Gaedeke Parties, the court applies the substantive law of the forum state—Oklahoma. *See*, McGehee v. Forest Oil Corp., 908 F.3d 619, 624 (10th Cir. 2018). Further, for a corporation, such as Grande, capacity to sue is determined "by the law under which it is organized." Rule 17(b), Fed. R. Civ. P. The parties do not dispute that Grande is an Oklahoma corporation.

### III.
### *Discussion*

Grande's Claims

In its First Amended Complaint, Grande alleges breach of contract claims against the Gaedeke Parties, arising from their failure to pay Grande for services rendered by the company. According to Grande, GOGO is indebted to Grande in the amount of $264,966.00, and GHVII is indebted to it in the amount of $499,126.00. *See*, doc. no. 82, ¶¶ 16, 18, 22, and 24 in CIV-20-170-F. Grande also seeks a declaratory judgment in its favor that the Pickard and Melear Claims are not owned by the Gaedeke Parties, but rather, are owned by certain non-party affiliates of the Gaedeke Parties. *Id.*, ¶¶ 27, 28, 29, and 31.

The Gaedeke Parties argue they are entitled to judgment as a matter of law on the claims alleged by Grande for two reasons. First, they assert that pursuant to 68 O.S. § 1212(C), Grande lacks the capacity to pursue its claims. They point out that as of the filing of their motion, Grande's corporate charter was suspended by the OTC, pursuant to 68 O.S. § 1212(A), for failure to pay corporate franchise taxes. And because Grande has continuously failed since August 2006 to remain in good standing with the OTC, the Gaedeke Parties argue that Grande has waived any right to cure its lack of capacity for purposes of this case. Second, the Gaedeke Parties assert that even if Grande has capacity to pursue its claims, those claims fail as a

matter of law because Grande was not a valid entity while doing business with them due to its suspension, and any alleged agreement to pay Grande for its services is voidable under § 1212(C).

In response, Grande proffers documentation to show it was reinstated by the OTC after the filing of the Gaedeke Parties' motion and that it is in good standing with the Oklahoma Secretary of State. *See*, doc. nos. 127-1 and 127-2. Grande states that the Gaedeke Parties' motion was the first time in this litigation that the suspension issue was raised, and it hastily resolved it. Grande maintains the reinstatement relates back and cures the penalties in place during suspension. Therefore, it contends that it is permitted to maintain its claims, even for transactions that may have been voidable at the time they occurred.

Upon review, the court concludes that summary judgment is not appropriate with respect to Grande's claims. Grande has proffered documentation to establish that it has been reinstated by the OTC and is in good standing with the Oklahoma Secretary of State. Consequently, it has the capacity to pursue its claims. *See*, Moncrief-Yeates v. Kane, 323 P.3d 215, 219 (Okla. 2013) ("The right to sue . . . and to be granted affirmative relief can be restored upon reinstatement."); *see also*, Williams v. Smith & Nephew, Inc., 212 P.3d 484, 491 (Okla. 2009) ("Reinstatement to good standing restores the corporation's ability to sue[.]").

The court rejects the waiver argument. Grande paid its taxes shortly after the suspension issue was raised in this litigation. Because it did so within a reasonable time after notified of the fact of its non-payment, the court finds that waiver is not warranted. Further, the court declines to deem Grande unable to cure its capacity to sue because Grande's corporate charter was suspended from August 2006 until February 2020 and then twice again—from February 2021 until October 2021 and from February 2024 until May 2024. As explained by the Oklahoma Supreme Court, "failure to pay franchise taxes is an issue between the corporation and the state . . . the purpose of section 1212(C) is to encourage taxpayers to pay their franchise taxes,

not to trap them into losing their right to [prosecute] lawsuits[.]" Williams, 212 P.3d at 489.

Although under § 1212(C) "[e]very contract entered into by or in behalf of [the] corporation" after forfeiture is "declared to be voidable," the court concludes that the Gaedeke Parties are not entitled to summary judgment with respect to Grande's breach of contract claims. "A voidable contract continues in existence until its repudiation or rescission by a party entitled to avoid the obligation." Kincaid v. Black Angus Motel, Inc., 983 P.2d 1016, 1019 (Okla. 1999); *see also*, Great American Insurance Co. v. Strain, 377 P.2d 583, 587 (Okla. 1962) ("[T]he contract continues in force and effect until its timely repudiation or recission by an affirmative act of the party entitled to avoid the obligation."). The Gaedeke Parties have not repudiated or rescinded the alleged agreements with Grande for the provision of land and brokerage services. They have alleged, as a defense in their answer to the First Amended Complaint, that Grande's claims are barred because Grande lacked capacity to contract. *See*, doc. no. 83, ECF p. 7, ¶ 8. Nonetheless, they have affirmatively alleged counterclaims for breach of contract – duty of good faith and fair dealing – based on those same agreements. Consequently, the court cannot conclude that the Gaedeke Parties are entitled to judgment as a matter of law on Grande's breach of contract claims because they are voidable. Consequently, the court finds that the Gaedeke Parties' motion with respect to Grande's claims should be denied.

Gaedeke Parties' Breach of Fiduciary Obligation Counterclaims and Imposition of Constructive Trust

The Gaedeke Parties also argue that they are entitled to partial summary judgment on their counterclaims against Grande and Swanson for breach of fiduciary obligations and their request for imposition of a constructive trust.

Where the moving party, such as the Gaedeke Parties, has the burden of persuasion at trial, a more stringent summary judgment standard applies. To obtain

6

summary judgment, "the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the nonmovant's case." Pelt v. Utah, 539 F.3d 1271, 1280 (10th Cir. 2008). The elements of a breach of fiduciary duty claim are "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of a fiduciary duty was the direct cause of damages." Graves v. Johnson, 359 P.3d 1151, 1155 (Okla. Civ. App. 2015).

Upon review, the court concludes that the Gaedeke Parties are not entitled to summary judgment on the breach of fiduciary obligations counterclaims. The Gaedeke Parties maintain that a fiduciary relationship existed between themselves and the Grande Parties based on an agency relationship. As is discussed a bit more at the end of this order, it seems likely, in the nature of things, that the Gaedeke Parties will be able to establish at trial an agency relationship, with all of the consequences, rooted in fiduciary law, that go with that status. But the court, based on the record before it, declines to rule, as a matter of law, that an agency relationship existed between the parties. The court opines that it is insufficient for summary judgment purposes to rely upon the court's finding at the discovery hearing that "Mr. Swanson and Grande were fiduciaries vis-a-vis the Gaedeke entities. They were fiduciaries because they had an agency relationship in which they received substantial advances of funds from Gaedeke." Doc. no. 125-7, ECF p. 7, ll. 13-16. As stated by the court, that finding was "for purposes of "[the subject discovery] motion." Id. at l. 12. It was also premised on an implication of what was alleged by the Gaedeke Parties in their first amended answer and counterclaims (doc. no. 48 in CIV-20-170-F) and on what was acknowledged by the Grande Parties' counsel at the hearing. Id. at ll. 16-21. But counsel's acknowledgement—Swanson was acting as an agent on behalf of "Gaedeke"—was also for "purposes of today and the tax returns." Id. at ECF p. 4, ll. 15-20.

7

Nevertheless, even if the Gaedeke Parties' evidentiary material were sufficient to establish the agency relationship as a matter of law, the court concludes that the Grande Parties have proffered sufficient evidence, viewed in their favor, to raise a genuine dispute as to whether the Gaedeke Parties, through Code Williams or Mark Reed,[1] acquiesced or ratified the Grande Parties' alleged misconduct. *See*, Bank of Oklahoma, N.A. v. Briscoe, 911 P.2d 311, 317 (Okla. Ct. App. 1995) ("[E]vidence of the principal's long-term acquiescence in an agent's unauthorized conduct may amount to ratification of such conduct by the agent so that the principal is estopped from denying liability for it.") (citing and quoting Mertz v. Owen, 126 P.2d 720, 729-30 (Okla. 1942) ("'[W]hen a principal knows or should know' his agent's acts are contrary to the agent's duty to his principal, or are 'contrary to good judgment and good management,' the principal has a duty to 'speak at once and exercise the control and authority that are his,' and 'a failure to do so for a period of years amounts to acquiescence or ratification . . . .'").

In their reply, the Gaedeke Parties argue, relying upon Illinois law, that Code Williams' alleged knowledge of Swanson's alleged misconduct cannot be imputed to it. Specifically, they argue that "[k]nowledge is not imputed when an agent is allegedly engaged in fraud and has a motive for concealing the information." Neece v. John Hancock Mut. Life Ins. Co., No. 86 C 7572, 1989 WL 15988, at *4 (N.D. Ill. Feb. 21, 1989), *aff'd* 914 F.2d 260 (7th Cir. 1990). Assuming without deciding that the Oklahoma Supreme Court would adopt the stated principle, the court concludes that the record before it does not establish, as a matter of law, that Mr. Williams "engaged in fraud and ha[d] a motive for concealing the information." Therefore, the court declines to find, as a matter of law, that Mr. Williams' alleged knowledge of Swanson's alleged misconduct cannot be imputed to the Gaedeke Parties.

---

[1] Mr. Williams was a Senior Landman and Vice President, and Mr. Reed was President.

8

As to the imposition of a constructive trust, the court also concludes that the Gaedeke Parties are not entitled to summary judgment. As stated by the Tenth Circuit, the conditions for imposing a constructive trust are as follows:

> The primary reason for imposing a constructive trust is to avoid unjust enrichment. It is imposed against one who by "fraud, actual or constructive, by [duress] or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either [has] obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy."

In re Seneca Oil Co., 906 F.2d 1445, 1450 (10th Cir. 1990) (quoting Easterling v. Ferris, 651 P.2d 677, 680 (Okla. 1982), quoting Cacy v. Cacy, 619 P.2d 200, 202 (Okla. 1980)) (bracketed words in original).

"Mere 'unfairness' in allowing the holder of the property to retain the property is *not* sufficient to justify imposition of a constructive trust." In re Seneca Oil Co., 906 F.2d at 1450 (citing Easterling, 651 P.2d at 680) (emphasis in original). "There must also be 'active wrongdoing' by the person holding the property." Id. "The evidence of wrongdoing 'must be clear, unequivocal, and decisive beyond a reasonable doubt . . . .'" Id. (quoting Easterling, 651 P.2d at 681).

Here, the court concludes that the Gaedeke Parties have not presented sufficient evidence to establish, as a matter of law, active wrongdoing by Swanson and Grande to justify the imposition of a constructive trust.

In sum, the court concludes that summary judgment is not appropriate with respect to the Gaedeke Parties' counterclaims for breach of fiduciary obligations and imposition of a constructive trust. That said, a brief digression is appropriate on the issues of agency, acquiescence and ratification. Based on what the record shows about the roles and responsibilities of the parties vis-à-vis each other, it is strongly counterintuitive to suppose (even though the court has declined to rule as a matter of law on this issue) that they did not have the agency relationship asserted by the

9

Gaedeke Parties. Barring the most unusual circumstances (not apparent here), fiduciary duties naturally flow from the existence of an agency relationship. Based on the Gaedeke Parties' essential allegations in their counterclaims, that is not good news for the Grande Parties (including Swanson). As for acquiescence and ratification, that only works if the necessary knowledge is imputed via a loyal, uncompromised officer or employee, acting within the scope of his duties. As to Williams and Reed, the question then becomes whether they were in all relevant respects acting in the interest of their principal with respect to the events and transactions in question. If not, that is fatal to the acquiescence and ratification defenses.

IV.

*Conclusion*

Accordingly, Gaedeke Holdings VII, Ltd and Gaedeke Oil & Gas Operating, LLC's Motion for Partial Summary Judgment (doc. no. 125 in CIV-20-170-F) is **DENIED**.

DATED this 8th day of August, 2024.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0344p015  SPF FINAL _.docx